```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                         ATHENS DIVISION
```

VINTAGE HOSPITALITY GROUP LLC,  *

    Plaintiff,                  *

vs.                              *
                                        CASE NO. 3:20-cv-90-CDL
NATIONAL TRUST INSURANCE         *
COMPANY, a foreign corporation,
                                 *
    Defendant.
                                 *

## O R D E R

Some cases present closer questions than others. This is such a case. The overriding question presented by Defendant's pending motion for summary judgment is who should decide the close question in this case, which is whether Plaintiff notified Defendant of an insured loss as soon as practicable. Because genuine factual disputes must be resolved to answer this question, the law assigns the ultimate determination here to a jury. That jury, which will represent a broad cross-section of the community, is best suited to hear the testimony, evaluate the witnesses' credibility, and apply their common sense and wisdom to find the truth from the evidence. While it may be tempting for a judge to arrogate to himself such decision-making, that temptation must be avoided. Who decides the important and close questions is as important as what is decided. As explained in the remainder of this Order, genuine factual disputes exist that must be resolved

by a jury, and therefore, Defendant's motion for summary judgment (ECF No. 14) is denied.[1]

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Vintage Hospitality Group LLC ("Vintage") was a named insured under an insurance policy issued by National Trust Insurance Company ("National").  National's policy covered the Comfort Inn and Suites at 3980 Atlanta Highway, Athens, Georgia.  Def.'s Mot. for Summ. J. Ex. C, Full Policy 4, ECF No. 14-5 [hereinafter

---

[1] In addition to the issue of whether Plaintiff provided timely notice under the policy, Defendant also argues in its motion that Plaintiff cannot prove causation because its expert must be excluded. As explained in the remainder of this Order, the Court finds those arguments unpersuasive, too.

2

Policy].² Construing all reasonable inferences in favor of Vintage as required at this stage, the record establishes that (1) a severe hailstorm ("the Storm") damaged the roof of Vintage's Athens Comfort Inn and Suites on July 21, 2018, Morris Suppl. Aff. ¶ 12, ECF No. 23-7; (2) the National Policy was in effect at the time of the damage, Policy at 4; (3) roof damage emerged two months after the Storm, Patel Aff. ¶¶ 1, 6, ECF No. 16-3; (4) the damage persisted notwithstanding attempts to fix it, *id.* ¶¶ 7-8; (5) the storm damage constituted a covered loss under the Policy for which National would be contractually obligated to pay as long as Vintage notified National "as soon as practicable," Policy at 125 § IV.2.a.; (6) the National Policy would not cover the damage that resulted in the leaks if that damage was due to normal wear and tear, Policy at 18 § 3.a, 91 § B.2.d; (7) Vintage first learned of the connection between the July 21, 2018 Storm and the damage to its roof in February 2020, Patel Aff. ¶¶ 9-11; and (8) Vintage reported its claim to National on February 21, 2020, *id.* ¶ 12.

After its investigation, National denied coverage because it concluded that Vintage had failed to notify National of the covered occurrence as soon as practicable, as required by the Policy. Vintage sues National for breach of the insurance contract.

---

² The Policy's page numbering is not sequential, so when the Court cites the Policy, it cites to the page number in ECF No. 14-5.

DISCUSSION

National moves for summary judgment on two grounds. First, National argues that Vintage failed to satisfy a condition precedent for coverage under the Policy as a matter of law because it failed to provide notice of the claim as soon as practicable. Second, National contends that even if there is a fact dispute on the timeliness of Vintage's notice, National is still entitled to summary judgment because Vintage cannot prove that the roof damage was caused by the Storm and thus covered under the Policy. The Court will address each issue in turn.

**I.   Was Vintage's Notice Untimely as a Matter of Law?**

The National Policy required Vintage to report a covered loss "as soon as practicable." It is undisputed that Vintage did not report to National the claim under its Policy until February 21, 2020, nineteen months after the hailstorm that it now contends caused the damage to its roof and seventeen months after it first became aware that its roof leaked. Patel Aff. ¶ 12. As explained by the owner of the property, Mr. Patel, he first observed leaks from the hotel roof in September of 2018, but he did not connect the leaks at that time to the Storm that had occurred two months earlier. In fact, he noticed no leaks immediately following the Storm during that preceding two months. *Id.* ¶¶ 5-6. When he first noticed the leaks, his focus understandably was on fixing the leaks, which he directed his maintenance supervisors to do. *Id.*

4

¶¶ 1, 6-8.  As a business owner anxious to get his property fully functional, he could be excused for not having a forensic investigation conducted immediately to determine the cause of the leaks.  He simply needed to stop the leaks to keep his customers safe and dry.  Unfortunately for Mr. Patel, the leaks persisted over the next year and a half.  *Id*. ¶ 8.  Eventually, in February 2020, Mr. Patel hired a construction company to evaluate the leaking roof.  *Id.* ¶ 9.  The construction company's representative advised him that the roof had experienced previous hail damage which was causing the leaks.  *Id.* ¶¶ 10-11.  Patel connected the damage to the July 21, 2018 Storm upon receipt of that report.  He promptly made a claim with National within a few days of receiving that information.

The question is whether under these circumstances Vintage waited too long to make its claim.  The National Policy does not place a hard deadline for reporting a claim.  Although National could have included such a definite deadline, it chose to provide a more flexible reporting requirement allowing its insured to notify it of any claim as soon as practicable. Georgia law, which applies here, identifies two relevant considerations for determining whether notification of a covered loss satisfies an insurance policy's requirement that losses be reported "as soon as practicable:" the length of the delay in notification and the justifiability of the excuses for the delayed notification.

5

Georgia courts have interpreted the policy language "as soon as practicable" to mean within a reasonable time considering all the circumstances. *Gregory v. Allstate Ins. Co.*, 214 S.E.2d 696, 698 (Ga. Ct. App. 1975). Therefore, it is necessary to evaluate the insured's reasonableness in this context. Depending on the circumstances, this determination sometimes can be made as a matter of law. *See Hathaway Dev. Co. v. Illinois Union Ins. Co.*, 274 F. App'x 787, 791 (11th Cir. 2008) (per curiam) (citing *Canadyne-Georgia Corp. v. Continental Ins. Co.*, 999 F.2d 1547, 1555 (11th Cir. 1993)). But typically, "[w]hether the excuse or justification was sufficient and whether the insured acted diligently in giving the notice are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case." *State Farm Fire & Cas. Co. v. Walnut Ave. Partners*, 675 S.E.2d 534, 538 (Ga. Ct. App. 2009) (quoting *Plantation Pipeline Co. v. Royal Indem. Co.*, 537 S.E.2d 165, 167 (Ga. Ct. App. 2000)); *accord Progressive Mountain Ins. Co. v. Bishop*, 790 S.E.2d 91, 95 (Ga. Ct. App. 2016).

The Court finds that the circumstances presented here create a genuine fact dispute as to whether Vintage gave notice of its claim as soon as practicable. It is clear that the Court cannot substitute a "bright line" deadline in the Policy when National chose to give its insured "some leeway in providing notice of a claim or suit or occurrence to an insurer." *Progressive Mountain*

6

*Ins. Co. v. Cason*, 626 F. App'x 916, 919 (11th Cir. 2015) (per curiam) (quoting *Park Pride of Atlanta v. City of Atlanta*, 541 S.E.2d 687, 691–92 (Ga. Ct. App. 2000)); *see also Bishop*, 790 S.E.2d at 95 ("[T]here is no bright-line rule on how much delay is too much."). Consequently, the fact that Vintage gave notice nineteen months after the event it now maintains gives rise to its claim is certainly not dispositive. If National had wanted to impose specific time limits, it could have "us[ed] different, less flexible contractual language that establishes precise deadlines." *Bishop*, 790 S.E.2d at 97. To find that the length of delay, standing alone without considering the surrounding circumstances, determines whether notice was as soon as practicable would rewrite the "reasonableness" and "practicable" elements out of the rule and reduce the requirement to an arbitrary one tied solely to "length of delay." Although the length of the delay standing alone is not dispositive, it is obviously not irrelevant. It must be considered in conjunction with the reasons for it to determine whether the notice was as soon as reasonable and practicable.

Here, Mr. Patel filed his claim within a few days of being informed by his roofing contractor that his persistently leaky roof was caused by previous hail damage. Before that report, he had not connected the leaks to hail. And without that connection, he would have no covered occurrence under the National Policy. The damage to his roof would only be covered if it was caused by

7

the hailstorm, so until he made that connection he had no reason to report a claim to National.  Filing a claim within a few days of becoming aware of a covered occurrence would certainly satisfy the as soon as practicable requirement.

The question here is whether it was reasonable for Vintage not to have made the connection earlier.  Should Mr. Patel have known as soon as his roof began leaking that the leaks could have been caused by the hailstorm that hit two months earlier?  Should he, at a minimum, have had someone crawl up on the roof to try to make that assessment?  Or was it reasonable for him to be focused on simply trying to get that roof fixed so his hotel guests would remain dry and safe?  Was it reasonable for him not to connect the leaky roof and the storm based upon the storm having occurred a distant two months before?  Would a reasonable person have expected there to have been leaks sooner, in closer proximity to the storm if the storm in fact caused them?  Or should this small business owner have determined, in the midst of trying to fix the leaks, that the hailstorm could have weakened the roof and that it was entirely feasible that such weakening did not culminate in actual leaks until two months later?  Perhaps he should have studied the weather for those two months following the storm and if there was not much rain for those two months maybe he should have ascertained that is why the leaks did not manifest themselves earlier.  Or maybe it's just not very believable that he did not know sooner

than he did that there was a connection between the damage and the storm. These are only a sampling of the questions that arise from the circumstances presented here. And they may ultimately be resolved in National's favor. But in our system, which cherishes the right of citizens to have their cases decided by a jury, it would be sheer arrogance for a single judge to think he has the right to decide them as a matter of law.[3] National's motion for summary judgment based upon lack of prompt notice is denied.

**II. Does a Genuine Fact Dispute Exist Regarding Causation?**

The Court turns next to whether Vintage has presented sufficient evidence to create a genuine factual dispute regarding causation. Relying upon expert testimony, National argues that the hotel's roof damage was caused by general wear and tear or deterioration of the roof, which is not covered under the Policy. Vintage responds with expert testimony of its own, submitting affidavits from Calob Morris, a roofing contractor who opines that

---

[3] As noted previously, whether notice was given as soon as practicable can sometimes be decided as a matter of law. But in most of the cases where this issue has been resolved as a matter of law, there was a substantial unjustified delay *after* the insured became aware of the insured occurrence. *See e.g. Hathaway*, 274 F. App'x at 789 (faulty workmanship by subcontractors); *Diggs v. S. Ins. Co.*, 321 S.E.2d 792, 793 (Ga. Ct. App. 1984) (automobile collision); *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. App'x 17, 22 (11th Cir. 2012) (per curiam) (filing of lawsuit covered by insurer defense and indemnification provisions); *Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 652 F. Supp. 851, 856 (N.D. Ga. 1986) (filing of lawsuits for claims covered by professional liability coverage). Here, Vintage filed its claim within a few days of connecting the roof damage to the hailstorm. Thus, a jury could reasonably conclude that there was no substantial delay in reporting after Vintage learned of the insured occurrence.

9

the Storm caused the roof damages.  If Morris's opinions may be considered by the Court, a genuine factual dispute clearly exists on causation.  Thus, National seeks to exclude Morris's opinions from the Court's consideration.  It first argues that Morris was not properly disclosed during discovery.  Alternatively, it maintains that his opinions do not satisfy the requirements of Federal Rule of Evidence 702.

### A.   Morris was Sufficiently Disclosed

Federal Rule of Civil Procedure 26(a)(2)(B) requires that a written report prepared and signed by an expert witness must accompany the disclosure of "retained or specially employed" expert witnesses.  Fed. R. Civ. P. 26(a)(2)(B).  Vintage argues that Morris was not retained as an expert for this litigation but was hired as a contractor to inspect the roof in an attempt to fix the roof damage.  During the course of that investigation, he discovered that the roof damage was caused by the Storm.  Morris Aff. ¶ 6, ECF No. 16-5; Morris Suppl. Aff. ¶¶ 11-12.  Although Vintage's contention that it did not consider Morris to be a "retained expert" under Rule 26 is not frivolous, Vintage was mistaken. But the Court finds that Vintage should not be prevented from using him under the circumstances presented here.  In fact, Vintage substantially complied with the disclosure requirements and any deficiency was not prejudicial to National.

Although Vintage did not provide a formal Rule 26(a)(2)(B) report for Morris, it did inform National that it planned to rely on Morris's expert testimony, which was included in two affidavits provided by Morris. Vintage disclosed Morris's background, the scope of his testimony, and contact information. It also informed National that Morris would "provide expert testimony regarding the nature and cause of the damage[.]" Def.'s Mot. to Strike Ex. A, Pl.'s Expert Designation 1 (Dec. 18, 2020), ECF No. 18-1. National was clearly on notice that Vintage planned to use Morris to connect the Storm to the roof damage. Vintage's disclosures substantially provided National with the information required to be disclosed under Rule 26(a)(2)(B).

The Court also is unconvinced that National suffered any prejudice by Vintage's alleged deficient disclosures. Vintage disclosed Morris on December 18, 2020—the deadline the parties agreed to for Vintage's expert disclosures—before discovery closed on February 16, 2021 and before National filed its summary judgment motion on March 8, 2021. *See* Scheduling & Disc. Order §§ IV.A, IV. F., ECF No. 9. This disclosure included Morris's name, address, telephone number, and employer name. Pl.'s Expert Designation 1. It stated that Morris planned to offer "expert testimony regarding the nature and cause of the damage, the necessity of the repairs, the cost to repair the damage." *Id.* National does not argue that it was prevented from taking Morris's

11

deposition to probe his opinions, the basis of which had been disclosed before discovery expired. Under these circumstances, the Court declines to exclude Morris's opinions for deficient disclosure.

### B.  Morris's Expert Testimony is Admissible

National also seeks to exclude Morris's testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). It argues that (1) Morris is not qualified to render an expert opinion in this case, (2) his methodology is unreliable, and (3) his opinions would be unhelpful to the jury.

As to his qualifications, Morris is a roofer who has worked for a roofing contractor called DreamWorks Roofing and Contracting, LLC. Morris Suppl. Aff. ¶¶ 3-5. During his tenure with DreamWorks, Morris has received education and training on "how to repair and replace roofing systems, including siding, gutters, windows, and decks." *Id.* ¶ 3. He has used this training to understand and determine the cause of damage to roofing systems so that they can be repaired properly. *Id*. ¶ 4. And construing reasonable inferences in Vintage's favor, the Court finds that Morris has implemented this training by actually working on roofs

to fix damage to them and/or to evaluate the source of the damage. *Id*. ¶ 3, 5.

Morris's qualifications are primarily experience-based. A witness "whose expertise is based purely on experience" may certainly qualify as an expert as long as "his preparation is of a kind that others in the field would recognize as acceptable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To allow the testimony to be considered by the jury, the Court must find that "it is properly grounded, well-reasoned, and not speculative." Fed. R. Evid. 702 advisory comm. note (2000 amends)). The Court's goal is to ensure that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. The Court is satisfied based on the current record that Morris's training and experience qualifies him to opine as to whether roof damage was likely caused by a hailstorm.

In addition to Morris's qualifications, National attacks the reliability of his methodology. To reach his opinion, Morris got on the roof of the Comfort Inn and Suites, personally inspected the roof and roofing accessories, took numerous photographs, studied the photographs, interviewed the hotel's owner, and reviewed weather data regarding the Storm including wind speeds

13

and hail size in the vicinity of the hotel.  Morris Suppl. Aff. ¶¶ 7-12.  He then explained how his assessment of this data supported his opinion that the Storm likely caused damage to the roof.[4]  The Court finds that Morris's methodology was sufficiently reliable.

Related to its attacks on the reliability of Morris's methodology, National argues that Morris's testimony would not be helpful to the jury.  Rule 702's helpfulness requirement rests upon the notion that expert opinion testimony should be restricted to "matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).  Otherwise, it is unnecessary.  Using his experience-based qualifications and a methodology that is reasonably designed to assess the nature and cause of damage to roofs, Morris intends to testify that the damage to Vintage's roof was likely caused by the hailstorm.  This subject matter is "beyond the understanding of the average lay person."  *Id.*  Consequently, it would be helpful to the jury.

"The Court fully understands its role as the gatekeeper to exclude irrelevant or unreliable expert testimony." *Grand Rsrv. of Columbus, LLC v. Prop.-Owners Ins. Co.*, No. 4:15-CV-53 (CDL), 2017

---

[4] Interestingly, National's expert used a strikingly similar methodology. *See* Ex. A to Def.'s Mot. for Summ. J. Ex. E, Garrido Expert Report 8, ECF No. 14-7.

14

WL 2618952, at *8 (M.D. Ga. Jan. 9, 2017), *aff'd*, 721 F. App'x 886 (11th Cir. 2018).  "This gatekeeping role, however, 'is not intended to supplant the adversary system or the role of the jury.'" *United States v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999)).  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  National will have this opportunity at trial.

For the foregoing reasons, the Court denies National's motion to exclude Morris.

## CONCLUSION

National's motion for summary judgment (ECF No. 14) and motion to exclude Morris (ECF No. 18) are denied.

IT IS SO ORDERED, this 6th day of October, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
